Argued December 9, reversed December 22, 1914, rehearing denied
January 19, 1915.

# SHARKEY v. PORTLAND GAS CO.*

(144 Pac. 1152; 145 Pac. 660.)

**Pleading—Amendments—Discretion of Trial Court.**

1   Where plaintiff alleged in his complaint that defendant, a gas
company, did not properly maintain a gas-main, but allowed gas to
escape, causing injury to plaintiff's trees, and the company traversed
the complaint and alleged as new matter that plaintiff knew of the
leakage, but neglected to notify the company thereof, and that as soon
as it became aware of the leakage, the same was repaired, the action
of the court in refusing to permit plaintiff at the trial to amend the
complaint, so as to allege negligence of the company, was within the
discretion conferred by Section 102, L. O. L., and would not be dis-
turbed on appeal.

> [As to how far amendments of pleading are allowable varying
> or altering cause of action, see notes in 34 Am. Dec. 158; 51
> Am. St. Rep. 414.]

**Gas—Gas Companies—Injuries from Escaping Gas—Care Required.**

2.   One engaged in the distribution and sale of illuminating gas
must exercise care proportionate to the danger to prevent the escape
of gas from mains, and escape of gas from a main is, in the absence
of any exculpatory explanation, some evidence of neglect, under the
doctrine of *res ipsa loquitur.*

**Gas—Injuries from Escaping Gas—Actions—Pleading.**

3.   A complaint in an action against a gas company for injuries
by gas escaping from a main, which alleges that the company did not
properly maintain the main, and allowed it to leak and that gas
leakage injured trees of plaintiff, charges that the escape of gas was
due to negligence.

**Gas—Injuries from Escaping Gas—Negligence—Question for Jury.**

4.   Whether a gas company was negligent in permitting gas to
escape from a main *held* for the jury.

**Appeal and Error—Grounds for Rehearing—Misstatement of Fact in
Opinion.**

5.   In an action for injury to plaintiff's trees, etc., from gas escap-
ing from a main due to a break from defective filling of an excavation,
an alleged erroneous statement in the opinion that the testimony
tended to show that the break was due to a water-main laid across
the gas-main *held* no ground for a rehearing.

---

*As to the liability of a gas company for negligence in the escape
or explosion of gas, see notes in 29 L. R. A. 337 and 32 L. R. A. (N. S.)
809.                                                        REPORTER.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action by Edward J. Sharkey and Fannie V. Sharkey against the Portland Gas and Coke Company, a corporation.

The plaintiffs are the owners of real property in Portland fronting on Eighth Street between Holladay and Pacific Streets.    The defendant is a corporation engaged in the distribution and sale of illuminating gas.    After stating that the plaintiffs have three trees in front of their premises, and that adjacent to them the defendant has a gas-main running north and south along Eighth Street, the plaintiffs allege:

"That said defendant did not properly maintain, conduct or keep in repair said gas-main; that said defendant allowed said gas-main to get in such a condition that it leaked; that the leakage in said gas-main continued for a long while; that said gas-main was not properly and frequently inspected by the gas company; that the gas leakage from said main within the last year has killed the three trees heretofore mentioned; that by reason of the facts hereinbefore alleged the plaintiffs are damaged in the sum of $500."

This quotation from the complaint is traversed by the answer.    The substance of the new matter in the answer is to the effect that the plaintiffs knew of the leakage of gas, if any existed, for a long time but neglected to notify the defendant; that as soon as it became aware that the gas was leaking from its main it immediately repaired it; and further that the negligence of the plaintiffs in failing to notify the defendant of the leakage, contributed to the death of the trees. The new matter of the answer is denied in the reply.

During the trial the plaintiffs asked leave to amend their complaint to the effect that the matters set forth

in the quoted portion of the complaint were due to the carelessness and negligence of the defendant. This motion was denied by the court. At the close of the testimony on behalf of the plaintiffs the court, on motion of the defendant, entered a judgment of nonsuit, and the plaintiffs appeal.

REVERSED. REHEARING DENIED.

For appellants there was a brief over the names of *Messrs. Wilson, Neal & Rossman* and *Mr. George F. Hopkins, Jr.,* with an oral argument by *Mr. A. King Wilson.*

For respondent there was a brief over the names of *Mr. H. W. Strong* and *Mr. John A. Laing,* with an oral argument by *Mr. Strong.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It is within the discretion of the court to allow a pleading to be amended during the trial: Section 102, L. O. L. We cannot say that the court abused its discretion in refusing the change desired, and hence the plaintiffs can take nothing here by virtue of that assignment of error.

The testimony on behalf of the plaintiffs strongly tended to show that the trees in question began to show signs of dying early in the month of July, when the leaves began to turn yellow and two of the trees actually died soon afterward. About this time, the plaintiffs, being apprehensive that the sickly appearance of the trees was caused by gas, dug down into the parking near them and became convinced that gas was escaping. They notified the company to that ef-

fect. The defendant then sent men, who drilled holes in the pavement from which gas escaped in sufficient quantity to be lighted by boys playing with matches. The company then excavated over the main and found that it had been broken, making a vent for the gas. Some of the testimony tends to attribute the break to the fact that a water-main had been laid across the gas-main by the city authorities, and that the refilling of the excavation caused a pressure against the gas-main, which it could not withstand, resulting in the breach from which the gas escaped.

2. Illuminating gas is a dangerous thing when it eludes control, and it is incumbent upon those who deal in it as an article of merchandise to use care commensurate with its harmful nature. Of course the diligence must be such as an ordinarly prudent person would exercise under like circumstances in managing such an article. In brief, the care must be proportionate to the danger to be reasonably apprehended from the agency under consideration. It is plain that a greater degree of absolute care should be exercised in such circumstances than in conducting a millinery-store or carpenter-shop. In either case, however, the care must be proportionate to the risk incurred. It is said in *Koelsch* v. *Philadelphia Co.,* 152 Pa. 355, 363 (25 Atl. 522, 524, 34 Am. St. Rep. 653, 18 L. R. A. 759):

"The escape of gas from the defendant's main was, in the absence of any exculpatory explanation, some evidence of neglect * * and when to this was added the testimony, already quoted, of one of the plaintiff's witnesses in respect to the appearance of the aperture through which it escaped, *prima facie* case was made out against the defendant."

In that case the defendant attributed the escape of gas to the separation of the joints of the pipe, due to

the building of an adjacent sewer.  On that point the court said:

"If such injury to a gas-main be a natural and probable consequence of the construction of a sewer in close proximity to it, and the defendant had knowledge, or ought to have had knowledge, of the construction of this particular sewer, it was its duty to efficiently guard against the damage that was likely to be sustained. * * It could not shift the responsibility upon the municipality or its contractor * * and it was for the jury to determine whether, from the notoriety attending the construction of a sewer, a gas company having a proper system of inspection would, or ought to, have knowledge within a shorter time than elapsed between the commencement of work upon the sewer in question and the discovery of the leak."

It is like the doctrine of *Boyd* v. *Portland Electric Co.,* 40 Or. 126 (66 Pac. 576, 57 L. R. A. 619), to this effect that:

"In actions against electric companies for injuries received from contact with live wires in public ways proof of the breaking of the wires and of the happening of the accident makes a *prima facie* case of negligence."

See, also, *Gould* v. *Winona Gas Co.,* 100 Minn. 258 (111 N. W. 254, 10 L. R. A. (N. S.) 889).

In other words, considering the inherently dangerous nature of illuminating gas and the duty of the defendant to control it, an instance of *res ipsa loquitur* occurs whenever the gas escapes to the injury of persons or property.

3. It is contended, however, by the defendant that this is a rule of evidence rather than of pleading, and that the plaintiffs should state that the escape of the gas was due to the negligence of the defendant.  In our judgment, however, the pleading is sufficient in

that respect. It would not be enough merely to say that the defendant was guilty of negligence. That is a mere conclusion of law. The complaint must state facts from which the court will be able to draw the conclusion of negligence. Having stated a sufficient omission of duty on the part of the defendant it is not necessary that the pleader should, so to speak, put a label upon the complaint and say in so many words: These allegations mean an imputation of negligence. If the facts alleged in the complaint in this action are proved as laid, a *prima facie* conclusion of negligence would be imputed to the defendant as a matter of law.

4. Within the meaning of the precedents, a case was made by the plaintiffs sufficient to go to the jury when they showed that the gas escaped and that, in consequence thereof, the trees were killed. Negligence is a question of fact to be determined by the jury: *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262 (108 Pac. 211). There being some evidence to sustain the allegations of the complaint, and that pleading being sufficient in averment as a matter of law, it was error to withhold the case from the jury.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.

Denied January 19, 1915.

## ON PETITION FOR REHEARING.

(145 Pac. 660.)

MR. JUSTICE BURNETT delivered the opinion of the court.

5. In the opinion heretofore filed in this case the following language was used:

"Some of the testimony tends to attribute the break to the fact that a water-main had been laid across the gas-main by the city authorities, and that the re-filling of the excavation caused a pressure against the gas-main, which it could not withstand resulting in the breach from which the gas escaped."

The petition for rehearing is based upon the hypothesis that the excerpt quoted is not a true statement of the fact. According to the petition, the inaccuracy consists in stating that the water-main was laid across the gas-main instead of directly beneath it. The opinion does not state that one main was laid upon the other, and it can make little difference whether it was laid transversely above or below or paralled above or below the other conduit, for the cause of the break was attributed to the manner in which the excavation was refilled and not to the contact of one main with the other. There was abundant testimony that the gas escaped; that the trees died; and that the break in the gas-main was caused by the defective manner in which the excavation for the city water-main was closed. Whether the defendant was negligent in not discovering the leak and controlling the escaping gas was a question of fact for the jury, to be determined from all the circumstances disclosed by the testimony; and hence it was an error to allow the nonsuit. As it

was the defective filling of the excavation to which the break was attributed, the inaccuracy of statement concerning the relative position of the two mains does not affect the case and constitutes no reason for a rehearing.          The motion is overruled.

                                      REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

----

Judgment for petitioner December 22, 1914, rehearing denied January 19, 1915.